The SCHOOL DISTRICT OF PHIL-
ADELPHIA, AND THE BOARD
OF EDUCATION,

v.

PHILADELPHIA FEDERATION OF
TEACHERS, Local 3, American Fed-
eration of Teachers, AFL–CIO.

Appeal of SCHOOL DISTRICT
OF PHILADELPHIA.

Commonwealth Court of Pennsylvania.

Argued March 3, 2003.
Decided April 14, 2003.

Andrew M. Rosen, Philadelphia, for ap-
pellant.

Ralph J. Teti, Philadelphia, for appellee.

BEFORE: SMITH–RIBNER, Judge,
and SIMPSON, Judge, and McCLOSKEY,
Senior Judge.

OPINION BY Judge SIMPSON.

The School District of Philadelphia (Dis-
trict) appeals from the decision of the
Court of Common Pleas of Philadelphia
County (trial court) to uphold a labor arbi-
trator's award between the District and
the Philadelphia Federation of Teachers,

Local 3, American Federation of Teachers, AFL–CIO (Union). We affirm.

The District and the Union signed a collective bargaining agreement (CBA) for the period covering September 1, 2000, through August 31, 2004. The CBA removed all references to past practices. The CBA also established, through a Side-Letter, a Past Practice Committee which would "evaluate and select past practices and side letters that shall be restored" for the duration of the CBA.[1]

All disputes concerning the interpretation or application of terms in the CBA must be submitted to arbitration under Section 903 of the Public Employe Relations Act.[2] A dispute arose involving the status of a written understanding regarding teacher coverage when substitute teachers were unavailable (Highsmith Memos).[3] The issue was submitted to an arbitrator. The arbitrator concluded the Highsmith Memos create alternative mechanisms for covering classes where substitute teachers are unavailable. The arbitrator essentially held that the abolition of past practices only extended to unwritten past practices and that the practices set forth in the Highsmith Memos retained vitality and did not need to be restored.[4]

The District appealed the arbitrator's award to the trial court and requested the trial court vacate the award. The trial court denied the request and confirmed the award. The District appeals.

The District contends that because the CBA removed from its text prior language recognizing past practices and permitting grievances regarding those practices, there is no language in the CBA supporting the arbitrator's conclusion that only unwritten past practices were abolished.

This Court's review of an arbitration award must accord "great deference to the award of the [a]rbitrator chosen by the parties." *State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. and Univ. Prof'l Ass'n (PSEA–NEA)*, 560 Pa. 135, 150, 743 A.2d 405, 413 (1999). An arbitrator's award must draw its essence from the CBA. *Id.* Our Supreme Court determined this essence test involves two prongs.

First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement and thus, appropriately before the [a]rbitrator, the [a]rbitrator's award shall be upheld if the arbitrator's interpretation can rationally be

---

1. SideLetter, Reproduced Record (R.R.) at R561–R566.

2. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.903.

3. The arbitrator found the Highsmith Memos were promulgated by the District in 1974 and, since then, accepted by both parties as the standard governing the manner in which classes should be covered when no substitute is available. R.R. at R8–R9.

4. The arbitrator concluded the District's proposal to eliminate past practices focused specifically on unwritten practices, and the parties have treated the Highsmith Memos as a written expression of their mutual understanding for more than 20 years. Although Dr. Highsmith may have unilaterally generated his memo, the substance of the memo concerning class coverage at issue in the instant case exists in written form and, therefore, is not an unwritten past practice that was eliminated by operation of the contract language negotiated in October 2000. Moreover, the Highsmith class coverage protocol refers specifically to the scant language in the 1972 contract that undoubtedly necessitated further elaboration in order to implement the parties' intent.
R.R. at R37.

derived from the collective bargaining agreement.

*Id.*

■ Here, the two-prongs of the essence test are met. We agree with the arbitrator's conclusion that "how children are served when substitute teachers are unavailable is an educational issue within the authority of the District, subject to its agreements with the [Union]." R.R. at R36. As the trial court correctly determined, the dispute was properly before the arbitrator pursuant to the grievance/arbitration provisions contained in the CBA. Trial Court Op. at 3. The arbitrator concluded the Highsmith Memos memorialized a written past practice, not an unwritten one. The practice was not one the parties agreed to terminate pending further discussion by the Past Practice Committee. Rather, it was a practice consistently and repeatedly implemented for over twenty-five years. R.R. at R 38. Unwritten practices may be rationally distinguished from written ones, because the terms of the latter are more easily and certainly established. The arbitrator's determination that the District could not unilaterally terminate the written practice without unambiguous consent from the Union was an interpretation rationally derived from the CBA.

Accordingly, we affirm the decision of the trial court.

### ORDER

AND NOW, this 14th day of April, 2003, the decision of the Court of Common Pleas of Philadelphia County in the above-captioned matter is affirmed.